**Lois ADAMS, et al., Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, and Does 1 through 10, Defendants.**

**No. 01CV4548GAF(MCX).**

United States District Court, C.D. California.

Feb. 19, 2002.

Kurt E. Kananen, Brian S. Kabateck, Jerilyn Jacobs, Paul D. Stevens, Quisenberry & Kabateck, Los Angeles, CA, for plaintiffs.

Peter H. Klee, Nathan S. Arrington, Jeffrey V. Commisso, Luce Forward Hamilton & Scripps, San Diego, CA, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE WARD CLAIM

FEESS, District Judge.

### I.

### INTRODUCTION

In this case, thirty-five homeowners near Lake Hemet, California filed suit against Defendants Allstate Insurance Company ("Allstate"), Allstate Insurance Group and Allstate Personal & Casualty Company,[1] alleging breach of contract, tor-

---

1. The Court's July 23, 2001 Order dismissed without prejudice both Allstate Insurance Group and Allstate Personal & Casualty Company from this action, explaining it was not convinced either entity, should their existence be proven, had any role in the case. In addition, the Court has issued an order to show cause questioning the joinder of plaintiffs in this case. However, having already heard argument on this motion, and consid-

tious breach of the implied covenant of good faith and fair dealing and unfair business practices. The action, originally filed in state court and removed to this Court on diversity grounds, followed from Allstate's denial of property damage claims submitted by Plaintiffs under a "Deluxe Allstate Homeowner's Policy."

The present motion focuses on the insurance claim of two of these Plaintiffs, the Wards. According to these Plaintiffs, the damage to their home arose out of the Metropolitan Water District's ("Metropolitan") construction of the Eastside Reservoir in the vicinity of their home, which included repeated blasting over a period of three or more years in the course of construction of a dam for the Eastside Reservoir project. Allstate denied Plaintiffs' claim, stating the blasting was not the cause of the damage and, in any event, the type of damage allegedly incurred fell outside the scope of the homeowner's policy held by the Wards.

Allstate now brings this Motion for Partial Summary Judgment solely on claims for Breach of the Implied Covenant of Good Faith and Fair Dealing ("insurance bad faith") and for related punitive damages. Allstate contends it is entitled to summary judgment on these causes of action because it did not act unreasonably in denying Plaintiffs' property damage claim. Rather, Allstate asserts it acted in good faith by relying on an independent expert investigation, which resulted in a genuine dispute over coverage liability for the property damage claim now at issue. Thus, Allstate argues that under the "genuine dispute" doctrine, this Court can conclude its actions in denying the Ward claim was not unreasonable as a matter of law.

Plaintiffs argue that genuine issues of material fact remain as to the reasonableness of Allstate's actions in denying their

claim, and assert that summary judgment should be denied. Plaintiffs contend that Allstate engaged in a pattern and practice of denying all property damage claims related to the Eastside Reservoir project by misrepresenting the nature of the damage suffered by their insured.

After reviewing the moving, opposition and reply papers, the voluminous exhibits submitted by both parties and the argument of counsel, the Court concludes Allstate's denial of the Ward property claim was based on an independent engineering firm investigation that established a genuine dispute as to coverage liability. Because Plaintiffs have failed to establish any genuine issue of material fact regarding the legitimacy of the investigation, the Court concludes as a matter of law that the "genuine dispute" doctrine precludes a finding of bad faith. Further, because the Court adjudicates the bad faith claim in Defendant's favor, the claim for punitive damages for insurance bad faith also fails. Accordingly, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment.

## II.

### FACTUAL BACKGROUND

The Court finds the following facts are undisputed or sufficiently uncontroverted:

### A. THE WARD PLAINTIFFS

Plaintiffs Troy and Charlene Ward own a home in Hemet, California, which is located two miles from the east dam of the Eastside Reservoir. (Ward SUF ("WSUF") ¶¶ 1 and 15). The home is also insured under an Allstate homeowner's policy, whose coverage includes property damage arising from "sudden and accidental direct physical loss," subject to certain limitations and exclusions. (SUF ¶ 2). These exceptions include damage caused

ered it on the merits, the Court will not defer its ruling.

by any of the following: earth movement; wear and tear; "settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings," and loss to covered property where there are "two or more causes of loss to the covered property[,] and the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover,** items 1 through 22." (Notice of Lodgment ("NOE") Ward Ex. 7 at 85–87) (emphasis in original).

On July 12, 2000, Plaintiffs submitted a claim to Allstate under their policy, asserting "[t]he cement, stucco and drywall surfaces at the insured property has generally suffered cosmetic to structural damage," as a result of blasting impacts made by Metropolitan's construction of the Eastside Reservoir Project. (WSUF ¶ 3; NOL Ward Ex. 2).[2] The Wards represent they first noticed damage to their home shortly after the Metropolitan blastings began, and later noticed further damage after it was brought to their attention by an ALG representative. (WSUF ¶¶ 16 and 18). According to the Wards' claim letter, the blasting apparently began in May 1996 and continued until December 1999. (NOL Ward Ex. 2). The letter also states that "[s]even independent engineering reviews have attributed localized recent property damage to quarry blasting at the Eastside Reservoir dam construction Project." (*Id.*)

**B. Allstate's Investigation and Denial of the Ward Claim**

Allstate assigned Claims Adjuster Neil Morgan to review and investigate the Ward claim. (WSUF ¶ 20). In July 2000, he retained the civil engineering firm AGRA Earth & Environmental, Inc. ("AGRA")[3] to inspect the Wards' alleged property damage. (WSUF ¶ 4). In the course of handling the Ward claim, Morgan did not personally visit the property or contact the Plaintiffs. (WSUF ¶¶ 33 and 34). AGRA representatives performed an investigation of the Ward property on August 22, 2000, (WSUF ¶ 5). According to AGRA's report, while the homeowners were present during the inspection, an ALG representative was not in attendance. (NOL Ward Ex. 5 at 1).

On September 28, 2000, AGRA submitted a report to Allstate, bearing the signature of three AGRA geologists, providing an explanation of the geotechnical investigation performed for the Ward claim, and ultimately concluding that the "distress noted at this property was not the result of blast-induced ground vibrations." (WSUF ¶ 5; NOL Ward Ex. 5 at 9). Rather, the geologists opined "the described cracks in exterior stucco and concrete slab-on-grade patios and driveway were more likely the effect of normal dimensional changes in the building materials from humidity and thermal (heat) cycles and possibly some post construction adjustment of the home." (NOL Ward Ex. 5 at 10). The report further indicated that some of the driveway concrete cracks were "likely concrete shrinkage cracks ... due to moisture variations." (*Id.*) Additionally, the report contains an explanation of other relevant information that was compiled and analyzed, including seismic data and peak particle velocity determinations. (*Id.* at 5–7).[4]

---

**2.** Greg Watson, a representative of the public insurance adjuster Advantage Loss Group ("ALG"), submitted the Allstate claim on behalf of the Ward Plaintiffs, after the homeowners retained ALG to assist them in handling their claim. Thus, the Defendant refers to this ALG claim as one made by the homeowners themselves. (Mot. at 2, n. 3).

**3.** AGRA has since changed its name to AMEC Earth & Environmental, Inc. as a result of a merger. (WSUF ¶ 30).

**4.** The report indicates that AGRA requested copies of Metropolitan's recorded blasting data, but its attorney denied the request. (*Id.* at 5).

After receiving and reviewing the AGRA report, Morgan forwarded his claim denial recommendation to Dick Ray. (WSUF ¶ 54). Morgan stated the Ward claim should be denied because the report found the claimed damages were not the result of "blast induced ground vibrations." (WSUF ¶ 54; NOL Ward Ex. 1 at 21). Ray then approved the claim denial, stating "[w]ithout a direct finding that the claimed damages are related to the blasting I see no coverage." (WSUF ¶ 54; NOL Ward Ex. 1 at 20).

In a letter dated October 3, 2000 and addressed to Mr. Watson, the Wards' ALG representative, Allstate denied the property damage claim. (WSUF ¶ 13; NOL Ward Ex. 6). As explained in the denial letter, Allstate made its decision after consideration of information provided by ALG, the Wards, and "engineering personnel." (NOL Ward Ex. 6) The letter further advised the Wards that AGRA's engineering report "indicates the reported damages are not the result of blasting or blast induced ground vibration, but were caused by occurrences not covered or excluded by the Allstate Deluxe Homeowner policy." (*Id.*)

### C. PLAINTIFFS SUE ALLSTATE

On December 4, 2000, thirty-five Hemet homeowners, including the Ward Plaintiffs, filed suit against Allstate in state court, claiming breach of contract, insurance bad faith and unfair business practices in violation of California law. The First Amended Complaint ("FAC") alleges similar causes of action against the Defendant by each homeowner, based upon approximately 30 allegedly similar property damage claims submitted to Allstate. (Amend. Compl.¶ 45). All Plaintiffs contend the blasting that occurred in the course of Metropolitan's construction of the Eastside Reservoir caused their identified property damage. (Amend.Compl.¶¶ 43–46). All Plaintiffs further assert Allstate's conduct

in denying their claims was part of an "overall scheme to reduce the costs of legitimate insurance claims which ha[ve] been instituted against all similarly situated plaintiffs," rising to the level of an "illegal pattern and practice implemented against all of its insureds." (Amend. Compl.¶¶ 575–576). Thus, the Ward Plaintiffs seek recovery for both compensatory and punitive damages.

The case moved forward in state court for some time. When non-diverse defendants were dismissed, however, Allstate removed the action to this Court on the basis of diversity of citizenship. On November 19, 2001, Allstate filed a Motion for Partial Summary Judgment against the Ward Plaintiffs, seeking judgment in its favor on the FAC's Forty Sixth Cause of Action (insurance bad faith) and the related claim for punitive damages. Plaintiffs oppose the motion.

### III.

### ANALYSIS

#### A. THE LEGAL STANDARD UNDER RULE 56

The Federal Rules of Civil Procedure provide that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that a genuine issue remains for trial. *Id; see also* Fed.R.Civ.P. 56(e).

## B. The Legal Standard Under Rule 56(f)

Pursuant to Rule 56(f), Plaintiffs ask the Court either to defer consideration of the present motion or to deny the motion, because Plaintiffs need additional discovery to respond to Defendant's arguments. Having reviewed the declarations submitted in support of what the Court construes as a Rule 56(f) motion, the Court finds that Plaintiffs have not made the showing necessary to obtain the requested relief.

Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ Compliance with Rule 56(f) requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery. In that regard, references in memoranda and declarations positing a need for discovery do not constitute a proper motion under Rule 56(f). Rather, the Rule requires affidavits setting forth with particularity: (1) why the party opposing summary judgment cannot respond; (2) the particular facts that the party reasonably expects to obtain in further discovery; and (3) how the information reasonably expected from its proposed discovery requests could be expected to create a genuine issue of material fact that would defeat the summary judgment motion. *In re Silicon Graphics Inc. Litigation*, 183 F.3d 970, 989 (9th Cir.1999); *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Failure to comply with these requirements establishes a proper basis for denying the Rule 56(f) motion and pro-

ceeding to resolve the motion for summary judgment. *Brae Transp.*, 790 F.2d at 1443. Moreover, even where these prerequisites are met, a court may refuse to continue hearing a summary judgment motion where a party has had the opportunity to conduct discovery in a diligent fashion, but failed to do so. *See, e.g., Stitt v. Williams*, 919 F.2d 516, 526 (9th Cir.1990).

■ Here, Plaintiffs fail to satisfy the standard under Rule 56(f). The Plaintiffs merely reference the need for additional discovery in their opposition papers and supporting declarations, and fail to clarify whether the relief requested is a refusal by this Court from considering Defendant's motions, or merely an order continuing consideration of the motions to a later date. But whatever relief is being sought, the Court concludes neither action is appropriate under the present circumstances.

The declaration offered by Jacobs in opposition to Defendant's motion does not outline with any specificity what facts Plaintiffs expect to uncover through discovery. With respect to the Ward claim, Jacobs anticipates receiving the Allstate claims handling manuals, yet fails to identify what triable issues might arise from a review of the manuals once received. (*See* Jacobs Decl. ¶ 6). Jacobs also asserts that the Ward Plaintiffs have not yet been able to depose Allstate employee Tony Pupa or AGRA employee Robert Dickey, nor have they completed the depositions of Ray and Everett. (Jacobs Decl. ¶ 5). In connection with such assertions, however, Plaintiffs again fail to state with any specificity what facts they intend to uncover through continued discovery, or what factual issues may arise out of such deposition testimony and/or manual review. Moreover, the fact that Plaintiffs present a detailed and thorough opposition to the present motion belies the assertion that they cannot defend against it. Accordingly, the Court **DE-**

NIES Plaintiffs' Rule 56(f) request, and proceeds to consider the merits of Defendant's motion.

## C. INSURANCE BAD FAITH CLAIMS

 Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). A cause of action for breach of the implied covenant is characterized as insurance bad faith, for which a plaintiff may recover tort damages. Success under the claim requires a showing that the insurer erroneously failed to pay benefits under an insurance policy, and the failure to do so was without proper cause. In short, the "ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits ... was unreasonable," and not as a result of mere negligence or bad judgment. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (2001) (*citing Opsal v. United Servs. Auto Ass'n*, 2 Cal.App.4th 1197, 1205, 10 Cal.Rptr.2d 352 (1991)); *see also Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). When evaluating the reasonableness of an insurer's claim denial, the company's actions and decisions are to be considered at the time they were made, not with the benefit of hindsight. *Chateau*, 90 Cal.App.4th at 347, 108 Cal. Rptr.2d 776 (citation omitted) (discussing "no hindsight" principle); *see also Rigas v. Allstate Ins. Co.*, No. CV–97–3919, 1998 WL 422671, at * 2 (C.D.Cal. April 16, 1998) (*citing Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 32, 148 Cal.Rptr. 653 (1978)).

 While the question of whether an insurer has acted in bad faith is generally one of fact, where there is a genuine issue of an insurer's liability under a policy, a court can conclude that an insurer's actions in denying the claim were not unrea-

sonable as a matter of law. *Chateau*, 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776. Thus, "[u]nder California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage." *Guebara*, 237 F.3d at 992.

## D. THE "GENUINE DISPUTE" DOCTRINE

The "genuine dispute" doctrine is well settled and often used in insurance bad faith actions brought under California law. The Ninth Circuit has frequently affirmed summary judgment orders in bad faith claims where the trial court's ruling was based on a genuine dispute over insurance coverage. *Guebara*, 237 F.3d at 993–94. While the California Supreme Court has yet to define the limits of this doctrine, it continues to be applied, on a case-by-case basis, to cases involving both factual and legal coverage disputes. *See id.* (citing as instructive the California appellate court decision *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000)); *see also Chateau*, 90 Cal.App.4th at 348, 108 Cal.Rptr.2d 776.

 In *Guebara*, where the insured and insurer became embroiled in a dispute over whether certain items were in fact destroyed in a fire, the insurance company ultimately denied coverage on the ground that the claimant had submitted a fraudulent claim, and that her dwelling had been destroyed in an arson fire. After the insurer denied the claim, the insured brought suit for breach of contract and insurance bad faith. *Guebara*, 237 F.3d at 990. The court concluded the content claim dispute was a genuine one because when denying the claim, the insurer relied on the opinions of independent experts and the inconsistent explanations offered by the insured relating to property allegedly damaged by the fire. *Id.* at 995. Affirming the trial court's entry of summary judgment in the insurer's favor on the bad

faith claim, the Ninth Circuit noted that the existence of a "genuine dispute" must be determined case-by-case, and the reliance on "[e]xpert testimony does not automatically insulate insurers from bad faith claims based on biased investigations." *Id.* at 996. Thus, a trial court should consider whether:

> (1) the insurer is guilty of misrepresenting the nature of the investigatory proceedings, ... (2) the insurer's employees lie during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation.

*Id.* (internal citations omitted).

Similarly, in *Chateau*, the court agreed with a lower court's application of the "genuine dispute" doctrine where the coverage dispute between the insured and insurer related to an adjustment of benefits paid under a policy. 90 Cal.App.4th at 349, 108 Cal.Rptr.2d 776. The court upheld the lower court's grant of the insurer's motion for partial summary judgment on the insured's claim of bad faith, concluding the insured failed to raise a triable issue of fact over alleged bad faith actions by the insurer in adjusting the property damage claim. *Id.; see also Benton v. Allstate Ins. Co.,* No. CV–00–00499, 2001 WL 210685, at *7 (C.D.Cal. Feb.26, 2001) (concluding the insured failed to raise a triable issue of fact as to the insurer's alleged bad faith claim denial); *Phelps v. Provident Life & Accident Ins. Co.,* 60 F.Supp.2d 1014, 1024 (C.D.Cal.1999) (same); *Allstate Ins. Co. v. Madan,* 889 F.Supp. 374, 382 (C.D.Cal.1995) (same).

### E. THE WARD BAD FAITH INSURANCE CLAIM

#### 1. *Allstate's Legitimate Basis for Disputing Coverage Liability*

■ The Defendant presents credible evidence to support a finding that the insurer had a legitimate reason to question coverage liability for the Ward property damage claim. In reaching this decision, the Court finds unpersuasive Plaintiffs' attempt to distinguish the facts of this case from the controlling authority by counting the number of experts involved. The Court concludes that under existing case law, a single, thorough report by an independent expert is sufficient, all other things being equal, to support application of the "genuine dispute" doctrine. As noted above, this Court must consider each bad faith claim on a case-by-case basis, and consider the record as a whole in concluding whether an insurer's claim denial was reasonable. *See Chateau,* 90 Cal. App.4th at 348 and 350, 108 Cal.Rptr.2d 776.

Allstate retained the independent engineering firm AGRA to investigate the claim, and based its denial of the claim on AGRA's findings regarding the source of the property damage. Therefore, the Court finds the record before it establishes a legitimate coverage dispute did exist between Allstate and the Plaintiffs, making application of the "genuine dispute" doctrine appropriate.

#### 2. *The Wards Fail to Raise Triable Issues of Fact as to Allstate's Alleged Bad Faith Actions*

Plaintiffs allege that triable issues of fact remain as to the reasonableness of the Defendant's actions in the investigation and denial of their claim. After reviewing the admissible evidence submitted by both parties, the Court concludes Plaintiffs fail to raise any triable issues of fact as to the alleged bad faith actions of Allstate.

#### a. **AGRA's Investigation of the Ward Claim**

Plaintiffs assert AGRA based its investigation of the Ward claim on insufficient

and inaccurate information. After reviewing the record before it, however, the Court finds AGRA supported its report and findings with correct scientific data and proper reasoning, and Plaintiffs offer no evidence to persuade the Court otherwise. And contrary to Plaintiffs' contention, the AGRA report is not inconclusive simply because of the wording of the conclusions which speak of the most likely or probable cause of the damage.

■ Plaintiffs also claim that three other engineering reports existed at the time of AGRA's investigation, which addressed the source of property damage at other Lake Hemet homes, and supposedly reached conclusions that conflicted with those offered in AGRA's report. (*See* Jacobs Decl.Exs. 5, 15 and 16). However, the Court also finds unpersuasive Plaintiffs' assertion that the findings contained in these three other reports raise a triable issue of fact as to the reasonableness of AGRA's report.

■ At the outset, the Court agrees with the Defendant that these reports are not admissible. Plaintiffs fail to properly authenticate the exhibits, and unauthenticated documents should not be considered in a motion for summary judgment. *See Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). The Court notes, however, that even if the reports were properly authenticated and made a part of the record in this action, their existence and content would not change the Court's conclusion on this issue.

The reports do not address the property at issue in the Ward claim; rather, they relate to different properties in the Hemet area whose homeowners also submitted claims to their insurers. At least one of these other reports expressly limits the findings made to the specific areas and features described within the report in connection with a "visual observation of the *specified* principal residence," and notes use of the report is for the "*sole* purpose of the client." (Jacobs Decl.Ex. 15 at 9) (emphasis added). Furthermore, the Court fails to see how the findings made in these three reports are in direct contravention, or even inconsistent with, those made by AGRA because no report conclusively attributes all property damage to the blasting. For example, one report concludes the proximate cause of the property damage "appears to have been impacted by seismic forces including earthquakes *and* blasting operations associated with the Eastside Reservoir Project construction." (Jacobs Decl.Ex. 5 at 4) (emphasis added) (identifying multiple recent earthquakes that may have impacted the site, including the 7.0 magnitude Hector Mine Quake). The other two reports are similarly inconclusive.[5] Finally, it is clear from these reports that the other houses were located at different distances from the blasting site, and that the alleged damage to those structures may have occurred at different times than the alleged damage to the Plaintiffs' residence. That these reports may have reached a different conclusion than AGRA serves at most to establish that a genuine dispute exists, even among experts, regarding the cause

---

5. For example, the second report concludes that cracks in one homeowner's driveway resulted from "a *combination* of typical shrinkage and the repetitive blasting operations which *may* have aggravated the existing cracks, causing cracks to widen or grow larger." (Jacobs Decl.Ex. 15 at 4) (emphasis added). And the third report concludes that "the

recent blasting from [Metropolitan's] construction ... *likely* caused some limited vibration felt at this site.... Because the structure is very flexible, any vibrations from blasting would likely have been felt by the occupants but would not have affected the connections of the structure". (Jacobs Decl.Ex. 16 at 1) (emphasis added).

of property damage suffered by homes in the vicinity of Metropolitan's blasting operations.

The Plaintiffs submit no opinion or report by an expert that alleges the nature and quality of AGRA's investigation was somehow incorrect or unreasonable. More importantly, Plaintiffs fail to present the opinion or report of any expert that even specifically addresses the Ward property. The only opinions Plaintiffs offer regarding the source of their property damage are those of an ALG representative and of the homeowners themselves. However, they provide no cite to authority that holds an insurer has a duty to follow the conclusions of a lay homeowner over those of an independent expert investigator. Accordingly, the Court finds Plaintiffs fail to raise a triable issue of fact as to the reasonableness of AGRA's investigation and report.

■ Putting aside these issues, Plaintiffs contend that the motion should be denied because an AGRA geologist has changed her conclusion and can no longer rule out the possibility that the type of damage at issue in the Ward claim could occur as a result of the blasting. However, the hindsight rule operates to preclude this Court's consideration of the engineer's deposition testimony, which could not have been known to Allstate when the claim was denied. Moreover, Plaintiffs fail to establish any evidence that Everett's opinion was known to Allstate at the time of the claim denial decision, and fail to address the fact that AGRA has consistently held to the view that Metropolitan's blasting has not caused the damage claimed by Plaintiffs, notwithstanding the present opinion of one of AGRA's geologists. (*See* Jacobs Decl.Ex. 1 at 111).

Therefore, Plaintiffs offer no admissible, cogent evidence that calls into question the reasonableness of AGRA's investigation of the Ward property damage claim.

### b. Allstate's Reliance on the AGRA Report

Plaintiffs also contend that Allstate's reliance on the AGRA Report was unreasonable in light of other information known to the insurer at the time of the claim denial, including the fact that AGRA had been unable to retrieve Metropolitan's blasting records. Because Allstate proceeded with the claim denial without first inquiring into the significance of the missing blasting data, Plaintiffs question the reasonableness of Allstate's reliance on AGRA's report.

The Court remains unpersuaded by Plaintiffs' argument, however, as the report itself provides no indication that AGRA was not prepared to make the conclusions found in the report without further research. In fact, the report made findings and reached conclusions using other seismic information without any suggestion that its findings were unreliable at the time of their presentation to Allstate. (*See* NOL Ward Ex. 5 at 5 and 7). Moreover, Plaintiffs offer no evidence that the AGRA geologists were unreasonable in reaching such conclusions utilizing the other seismic information available to them. Accordingly, the Court finds that Plaintiffs fail to raise any triable issues of fact as to the reasonableness of Allstate's reliance on the AGRA report.

### c. Allstate's Investigation of the Ward Claim

Plaintiffs further assert that triable issues of fact remain regarding whether Allstate adequately investigated their claim. In support of this assertion, the Plaintiffs contend that Allstate ignored the existence and content of the three other conflicting engineering reports, and failed to retain an impartial third party to evaluate and reconcile the inconsistencies between these reports and the one submitted by AGRA.

Allstate correctly asserts that a plaintiff's list of actions that an insurer should have taken prior to denying a claim does not automatically raise a triable issue of fact regarding reasonableness. "While certain actions that an insurer may have failed to take are important in analyzing its overall handling, a mere recitation of actions that an insurer should have taken is not dispositive." *Cardiner v. Provident Life & Accident Ins. Co.*, 158 F.Supp.2d 1088, 1105 (C.D.Cal.2001).

Furthermore, Plaintiffs provide no authority in support of their contention that Allstate had an obligation to retain an arbiter of sorts to evaluate and resolve the allegedly inconsistent conclusions of the various engineering reports known to the insurer. As the Court discussed above, the three engineering reports are inadmissible because Plaintiffs failed to properly authenticate the exhibits. Nonetheless, the reports address properties other than the one at issue in this claim, and do not even directly contradict the findings made by AGRA. Moreover, the Court notes that even if these reports did conflict with the findings offered by AGRA, it would not have been per se unreasonable for Allstate to rely on the report and findings of its own expert over those offered by an insured's expert. *See Fraley*, 81 Cal.App.4th at 1293, 97 Cal.Rptr.2d 386. And in the instant case, the record indicates the Plaintiffs submitted no such expert report to Allstate; rather, the Wards offered nothing more than their own lay opinion as to the source of the alleged property damage.

Overall, after reviewing the parties' arguments and the admissible evidence presented, the Court concludes Plaintiffs fail to raise any triable issues of fact relating to the alleged bad faith actions of Allstate. Thus, the Court finds application of the "genuine dispute" doctrine appropriate under the present circumstances, and holds that Allstate's actions surrounding the investigation and denial of the Ward claim were not unreasonable as a matter of law. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the Ward bad faith insurance claim.

### F. Punitive Damages in Insurance Actions

Defendants argue that regardless of how this Court rules on the bad faith claim, summary judgment on Plaintiffs' punitive damages claim is appropriate. Plaintiffs counter that the issue is one better left for the jury. However, because this Court determined the Defendant is entitled to summary judgment on Plaintiffs' bad faith claims, the insurer is also entitled to summary judgment in its favor on the related claim for punitive damages.

The California Civil Code provides, in pertinent part:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal.Civ.Code § 3294(a); *see also Phelps v. Provident Life and Accident Ins. Co.*, 60 F.Supp.2d 1014, 1026 (C.D.Cal.1999) (*citing* Cal.Civ.Code §§ 3294(a) and 3194(c)).

Before a plaintiff may ever recover under a claim for punitive damages, he or she must first establish by clear and convincing evidence that the defendant acted with malice, oppression or fraud. *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citation omitted); *see also Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App.4th 1269, 1288, 31 Cal.Rptr.2d 433 (1994). This higher clear and convincing evidentiary standard applies at every stage

of the litigation process, including summary adjudication. *See Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1121, 105 Cal.Rptr.2d 153 (2001). Thus, a plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive summary judgment on a related claim for punitive damages. *Lunsford,* 18 F.3d at 656; *Madan,* 889 F.Supp. at 382.

Therefore, in light of this Court's holding that the Defendant is entitled to summary judgment of Plaintiffs' bad faith claim, it follows the Defendant is entitled to the same relief with respect to the related punitive damages claim. Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiffs' claim for punitive damages.

### IV.

### CONCLUSION

For the reasons as set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to the bad faith and punitive damages claims alleged by the Ward Plaintiffs.

IT IS SO ORDERED.