**Rozik KESHISH and Vartan Keshish, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, and Does 1–10, Defendants.**

**Case No. CV 12–03818 MMM (JCx).**

United States District Court, C.D. California.

April 22, 2013.

Anahid Barsegian, Ana Barsegian Law Offices, Glendale, CA, Ari Emanuel Moss, Law Offices of Ari Moss, Sherman Oaks, CA, for Plaintiffs.

Peter H. Klee, McKenna Long and Aldridge LLP, San Diego, CA, Theona Zhordania, McKenna Long and Aldridge LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARGARET M. MORROW, District Judge.

On April 2, 2012, Rozik and Vartan Keshish filed this action against Allstate Insurance Company, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, elder abuse, violation of the Unruh Civil Rights Act, and violation of California's Unfair Competition Law ("UCL").[1] The parties thereafter stipulated to dismiss the UCL claim.[2] On July 30, 2012, the court granted in part and denied in part Allstate's motion for judgment on the pleadings.[3] Specifically, it granted judgment in Allstate's favor on plaintiffs' Unruh Act claim, but declined to enter judgment on the remaining claims.[4] The court also determined that plaintiffs' breach of contract claim and breach of the covenant of good faith and fair dealing were entirely duplicative, such that they were not separate claims but rather one claim for breach of the implied covenant.[5] The parties later stipulated to dismiss

---

[1]. Removal, Docket No. 1 (May 2, 2012), Exh. A ("Complaint").

[2]. Stipulation to Dismiss Fifth Claim for Relief, Docket No. 9 (May 22, 2012).

[3]. Order Granting in Part and Denying in Part Motion for Judgment on the Pleadings, Docket No. 18 (July 30, 2012).

[4]. *Id.* at 21.

[5]. *Id.* at 8 ("[T]he breach of contract claim is duplicative of the breach of implied covenant claim, since the plaintiff can recover contract damages in addition to tort damages on the latter").

plaintiffs' elder abuse claim.[6] Thus, the claim for breach of the covenant of good faith and fair dealing is the sole remaining cause of action. On February 23, 2013, Allstate filed a motion for summary judgment on this claim.[7] Plaintiffs oppose the motion.[8]

## I. BACKGROUND

This case concerns a homeowners' insurance policy that Allstate issued to plaintiffs.[9] In late August or early September 2009, a wildfire broke out in the Sunland–Tujunga area near plaintiffs' home.[10] On October 2, 2009, plaintiffs' attorney submitted a claim for smoke damage to Allstate.[11] She requested that a home inspection be expedited because Rozik Keshish was a kidney transplant recipient.[12] To accommodate this request, Allstate assigned plaintiffs' claim to an available claims adjuster.[13] The adjuster inspected plaintiffs' property on October 5, 2009 to determine the scope of the smoke damage;[14] he estimated repair costs of $8,582.09, and forwarded this estimate to plaintiffs' attorney.[15] On October 9, 2009, plaintiffs' attorney called the adjuster to complain that the estimate was too low;[16]

in response, Allstate retained ServiceMaster, an independent contractor, to reevaluate the damage.[17] Allstate also paid plaintiffs $7,582.09, which represented the amount of the original estimate minus a $1,000 deductible.[18]

On November 10, 2009, after evaluating the property, ServiceMaster submitted an independent estimate to Allstate. It placed the damage at $5,322.97, more than $3,000 less than the adjuster's original estimate.[19] ServiceMaster opined that this amount was sufficient to complete all necessary cleaning and repairs.[20] On November 20, 2009, plaintiffs' counsel sent Allstate a letter objecting to ServiceMaster's estimate; she included with the letter the estimates of two contractors plaintiffs had retained; they placed cleaning and repair costs at $81,326.45.[21] Allstate determined that this estimate was too high, and advised plaintiffs that it would not pay any additional amounts on the claim.[22] Allstate closed plaintiffs' file on December 28, 2009; it sent a letter instructing them to contact it immediately if they discovered additional damage not accounted for in

6. Stipulation to Dismiss Third Claim for Relief for Elder Abuse, Docket No. 26 (Nov. 7, 2012).

7. Motion for Summary Judgment ("Motion"), Docket No. 38 (Feb. 23, 2013); Reply in Support of Motion for Summary Judgment ("Reply"), Docket No. 43 (March 25, 2013).

8. Opposition to Motion for Summary Judgment ("Opp."), Docket No. 41 (March 18, 2013).

9. Statement of Uncontroverted Facts ("SUF"), Docket no. 39 (Feb. 23, 2013), ¶ 1; Statement of Genuine Issues ("SGI"), Docket No. 41 (March 18, 2013), ¶ 1.

10. SUF, ¶ 2; SGI, ¶ 2.

11. SUF, ¶ 3; SGI, ¶ 3.

12. SUF, ¶ 3; SGI, ¶ 3.

13. SUF, ¶ 4; SGI, ¶ 4.

14. SUF, ¶ 5; SGI, ¶ 5.

15. SUF, ¶¶ 6–7; SGI, ¶¶ 6–7.

16. SUF, ¶ 8; SGI, ¶ 8.

17. SUF, ¶ 9; SGI, ¶ 9.

18. SUF, ¶ 10; SGI, ¶ 10.

19. SUF, ¶ 12; SGI, ¶ 12.

20. SUF, ¶ 13; SGI, ¶ 13.

21. SUF, ¶ 14; SGI, ¶ 14.

22. SUF, ¶ 16; SGI, ¶ 16.

Allstate's original estimate.[23]

Two months later, plaintiffs retained an independent industrial hygienist to inspect their property and prepare a report regarding the level of smoke damage to the home.[24] Plaintiffs did not advise Allstate that they had hired a hygienist or that they had an additional evaluation of the property conducted.[25] From mid-February to May 2010, plaintiffs' attorney sent five letters to Allstate, demanding an appraisal of the loss under the policy's appraisal provision.[26] None of these letters enclosed a copy of the hygienist's report or mentioned its existence.[27] The letters were not received by the proper Allstate representatives until June 3, 2010, because they referenced an incorrect claim number.[28] On June 4, 2010, Allstate responded that it would review any new information plaintiffs had obtained since it had closed its file.[29] Allstate sent a follow-up letter on June 15, 2010, again requesting any new information plaintiffs had received.[30] Plaintiffs did not provide the hygienist's report.

Between July 2010 and January 2012, plaintiffs and Allstate exchanged several letters in an attempt to select appraisers and conduct the appraisal process.[31] The process was delayed several months because plaintiffs did not timely select an umpire.[32] Once they did, plaintiffs did not immediately pay him, and the umpire refused to participate in the appraisal until he had been compensated.[33] Finally, on January 17, 2012, Allstate received notice that plaintiffs' umpire anticipated he would be paid and was prepared to engage in the appraisal process.[34] Allstate also learned for the first time that plaintiffs had retained a hygienist who had prepared a report.[35] Allstate spoke with its appraiser, who said that the hygienist's report had been prepared in February 2010; he advised Allstate to have a hygienist report prepared and submit it to the appraisers.[36]

Allstate retained a hygienist in late January 2012. Plaintiffs, however, refused to allow Allstate's hygienist to inspect the property. As a consequence, plaintiffs' was the only hygienist report submitted to the appraisers.[37] In February, 2012, the appraisal panel determined that the value of plaintiffs' loss was $42,950.[38] This was $34,367.91 more than Allstate's estimate, but $38,826.45 less than plaintiffs' demand.

23. SUF, ¶ 17; SGI, ¶ 17.

24. SUF, ¶ 18; SGI, ¶ 18.

25. SUF, ¶ 20; SGI, ¶ 20.

26. SUF, ¶ 21; SGI, ¶ 21. The appraisal provision in the policy gives the insured a right to request an independent appraisal in the event the insured and Allstate disagree regarding the amount of loss. Under the policy, each party is to select a disinterested umpire; together, the umpires must then conduct an informal evaluation of the insured's claim. Each umpire is to be paid by the party who selected him or her. (Exhibits to Motion for Summary Judgment ("Exhibits"), Docket No. 40 (Feb. 23, 2013), Exh. 1 ("Policy") at 28.

27. SUF, ¶ 22; SGI, ¶ 22.

28. SUF, ¶ 23; SGI, ¶ 23.

29. SUF, ¶ 24; SGI, ¶ 24.

30. SUF, ¶ 26; SGI, ¶ 26.

31. SUF, ¶¶ 29–51; SGI, ¶¶ 29–51.

32. SUF, ¶ 36; SGI, ¶ 36.

33. SUF, ¶ 50; SGI, ¶ 50.

34. SUF, ¶ 51; SGI, ¶ 51.

35. SUF, ¶ 51; SGI, ¶ 51.

36. SUF, ¶ 52; SGI, ¶ 52.

37. SUF, ¶ 57; SGI, ¶ 57.

38. SUF, ¶ 60; SGI, ¶ 60.

On March 23, 2012, Allstate paid the full amount of the appraisal award.[39]

## II. DISCUSSION

### A. Standard Governing Motions for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R.CIV.PROC. 56. A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See *id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.PROC. 56(e)(2). Evidence presented by the parties at the summary judgment stage must be admissible. FED. R.CIV.PROC. 56(e)(1). In reviewing the record, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

### B. Whether Allstate is Entitled to Summary Judgment on Plaintiffs' Breach of the Covenant of Good Faith and Fair Dealing Claim

■ California law implies a covenant of good faith and fair dealing in every contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992); see also *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir.2002) (noting that "California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract" (citations omitted)). The covenant is implied "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract." *Marsu B.V. v. Walt Disney Co.*, 185 F.3d 932, 938 (9th Cir.1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal. App.4th 432, 447, 21 Cal.Rptr.2d 313 (1993)). This principle applies to insurance policies just as it does to other types of contracts. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151, 2 P.3d 1 (2000). "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) [that] benefits due under the policy were withheld; and (2) [that] the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001) (citing *Love v. Fire Ins.*

---

39. SUF, ¶ 61; SGI, ¶ 61.

*Exch.,* 221 Cal.App.3d 1136, 1151, 271 Cal. Rptr. 246 (1990)).

■ "The implied covenant of good faith and fair dealing acts as a 'supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.'" *Moncada v. Allstate Ins. Co.,* 471 F.Supp.2d 987, 996 (N.D.Cal.2006) (quoting *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 44, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995)). There can be a breach of the covenant even if the express terms of the contract are not breached. See *Schwartz v. State Farm Fire and Cas. Co.,* 88 Cal. App.4th 1329, 1339, 106 Cal.Rptr.2d 523 (2001) ("It is well-established that a breach of the implied covenant of good faith is a breach of the contract . . . and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing"). Nonetheless, a necessary prerequisite to such a claim is a showing that benefits due under the policy were withheld unreasonably or without proper cause. Moreover, "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers,* 2 Cal.4th at 373, 6 Cal.Rptr.2d 467, 826 P.2d 710.

Allstate advances three arguments as to why it is entitled to summary judgment: (1) there was a genuine dispute concerning the value of plaintiffs' insurance claim; (2) plaintiffs concealed the existence of the hygienist's report; and (3) plaintiffs refused to allow Allstate's hygienist access to the property.

### 1. Whether There Was a Genuine Dispute Regarding the Value of Plaintiffs' Claim

■ It is well established that "an insurer does not act in bad faith so long as a 'genuine dispute' exists over an insured's coverage." *Maynard v. State Farm Mut. Auto. Ins. Co.,* 499 F.Supp.2d 1154, 1160 (C.D.Cal.2007) (citing *Rappaport–Scott v. Interinsurance Exchange of Auto. Club,* 146 Cal.App.4th 831, 837, 53 Cal.Rptr.3d 245 (2007)). A genuine dispute exists only where "the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.,* 42 Cal.4th 713, 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007). "The genuine issue rule in the context of bad faith claims allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir.2002); see also *Lunsford v. Am. Guar. & Liab. Ins. Co.,* 18 F.3d 653, 656 (9th Cir.1994) ("[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability").

■ An insurer may demonstrate the existence of a genuine dispute by showing that "it relied on opinions from experts while evaluating the insured's claim." *Maynard,* 499 F.Supp.2d at 1160 (citing *Fraley v. Allstate Ins. Co.,* 81 Cal. App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000) ("The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts")). A genuine dispute can also exist if "an arbitrator awards substantially lower damages than Plaintiff claims." *Id.* (citing *Rappaport–Scott,* 146 Cal.App.4th at 839, 53 Cal.Rptr.3d 245 ("[T]he vast difference between the $346,732.34 in losses claimed by Rappaport–Scott and the $63,000 in

actual losses as determined by the arbitrator demonstrates, *as a matter of law*, that a genuine dispute existed as to the amount payable on the claim" (emphasis original))); *Holland v. Westport Ins. Corp.*, No. C 04–1238 CW, 2007 WL 1456045, *4 (N.D.Cal. May 17, 2007) ("[E]ven if an arbitrator later awards a greater amount than the insurer offered, the amount of that award in comparison to the amount demanded by the insured can establish a lack of bad faith as a matter of law").

■■■ In deciding whether there was a genuine dispute, "the court does not decide which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal.App.4th 335, 348, 108 Cal.Rptr.2d 776 (2001). "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events that may provide evidence of the insurer's errors." *Id.* at 347, 108 Cal.Rptr.2d 776.

### a. Whether Allstate's Reliance on ServiceMaster's Estimate Insulates it From a Bad Faith Claim

■■■ The gravamen of plaintiffs' claim is that Allstate failed to conduct a good faith review of their property damage claim.[40] Allstate argues that its reliance on the ServiceMaster estimate, which was substantially lower than plaintiffs' esti-

mate, precludes a finding that it acted in bad faith in evaluating plaintiffs' claim.[41] It is well settled that an insurer's reliance on an expert's independent analysis can suffice to show that there was a genuine dispute regarding the amount owed; such reliance "will not[, however,] *automatically* insulate an insurer from a bad faith claim based on a biased investigation." *Chateau Chamberay*, 90 Cal.App.4th at 348, 108 Cal.Rptr.2d 776. Even where an insurer has relied on an expert, the court must deny summary judgment on a bad faith claim if evidence shows that "the insurer dishonestly selected its experts[,] the insurer's experts were unreasonable[,] [or] the insurer failed to conduct a thorough investigation." *Id.* at 348–49, 108 Cal.Rptr.2d 776. See also *Guebara*, 237 F.3d at 996 ("Expert testimony does not automatically insulate insurers from bad faith claims based on biased investigations. Although this list is not exhaustive, we can think of several circumstances where biased investigation claims could go to a jury: (1) the insurer is guilty of misrepresenting the nature of the investigatory proceedings; (2) the insurer's employees lie during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation").

It is undisputed that, after plaintiffs objected to Allstate's original estimate, the insurer retained ServiceMaster to conduct

---

**40.** Opp. at 19. Plaintiffs devote a substantial portion of their opposition to a discussion of California's arbitration rules and the level of deference courts must give arbitration awards. (See Opp. at 11–16). Plaintiffs argue that Allstate's motion is a collateral attack on the arbitration award and should not be permitted. The court fails to see, however, how Allstate's motion is in any manner an attack on the appraisal award. Allstate has

paid the money it owed under the award, and is not seeking restitution or reimbursement. Rather, it is trying to avoid *additional* liability, beyond that it has already incurred as a result of the appraisal. The court therefore finds plaintiffs' discussion of the arbitration rules inapposite.

**41.** Motion at 17.

an independent review. It is further undisputed that ServiceMaster's estimate of the damage was even lower than the original estimate provided by Allstate's adjuster. Despite this, Allstate paid plaintiffs the amount of the higher initial estimate. Plaintiffs proffer no evidence that ServiceMaster's investigation was cursory, biased, or deficient in any way. They also adduce no evidence that Allstate misrepresented to ServiceMaster the scope or focus of the inspection it needed to perform, such that ServiceMaster's evaluation was incomplete or flawed. Rather, based on the record, it appears that ServiceMaster did a thorough review of each room in plaintiffs' home, inspecting the residence's structure and the furniture contained in it.[42] The individual who conducted ServiceMaster's evaluation was a certified smoke remediation technician, who specialized in evaluating and remediating smoke damage and had six years experience on the job.[43] Plaintiffs proffer no evidence that challenges her expertise or the manner in which she handled the evaluation of the property. Based on the undisputed evidence, therefore, Allstate acted reasonably in relying on ServiceMaster's independent estimate when it denied plaintiffs' claim for additional loss amounts.[44] See *Adams v. Allstate Insurance Co.*, 187 F.Supp.2d 1207, 1215–17 (C.D.Cal.2002) (granting summary judgment on a bad faith claim where an insurer relied on an expert report from AGRA and "[p]laintiffs submit[ted] no opinion or report by an expert ... alleg[ing that] the nature and quality of AGRA's investigation was somehow incorrect or unreasonable"); see also *Anderson v. USAA Cas. Ins. Co.*, No. C 06–07948 WHA, 2008 WL 619004, *8–9 (N.D.Cal. Mar. 4, 2008) (finding a genuine dispute between insured and insured because the insurer "based its decision on expert opinions" and "[n]othing in the record supports the theory of a biased investigation by [the retained experts]"); *Badell v. Celtic Life Ins. Co.*, 159 F.Supp.2d 1186, 1194 (N.D.Cal.2001) ("Plaintiff contends that Celtic acted unreasonably by forwarding insufficient evidence to the [expert].... She offers no authority that suggests why this information [sent to the

---

**42.** (Declaration of Ari Moss ("Moss Decl."), Docket No. 42 (March 18, 2013), Exh. 3 (ServiceMaster Estimate). The estimate is comprised of several pages of specific, detailed cost breakdowns for cleaning and repairing both the structural components of the home and the furniture in each room.

**43.** Declaration of Sonyia Rouel ("Rouel Decl."), Docket No. 38 (Feb. 23, 2013).

**44.** The only argument plaintiffs offer regarding the substance of the ServiceMaster report is that it failed to determine how far plaintiffs' property was from the "fire-line." (Opp. at 8). Plaintiffs do not explain the relevance of this fact; presumably, however, they argue that this piece of information was a necessary component of a reasonable insurance evaluation, and that the closer the distance, the greater the damage that was likely. Even if this is correct, the evidence cited by plaintiffs in support of their argument does not demonstrate that ServiceMaster failed to determine the distance between the property and the fire-line. At his deposition, ServiceMaster's CEO testified that while the distance was not "precisely known," his company determined that the fire-line was approximately "half a mile away from the residence." (Moss Decl., Exh. 10 at 133:2–4). The CEO also stated that ServiceMaster took this fact into account in valuing plaintiffs' loss. (*Id.* at 134:7–14 ("Knowing that it was a half mile from the fire, based on our experience, there was a stronger likelihood that that household had fire particulates in there than a household on the coast.... These are the things that I'm looking at during the fire—wildfire assessment period"). Thus, plaintiffs argument that ServiceMaster failed to consider the distance between the house and the fire-line is unavailing. As a consequence, they cannot raise triable issues of fact concerning the reasonableness of ServiceMaster's investigation on this basis.

expert] was so insufficient as to constitute a breach of the implied covenant of good faith and fair dealing"); *Cardiner v. Provident Life & Acc. Ins. Co.*, 158 F.Supp.2d 1088, 1101–02 (C.D.Cal.2001) (granting summary judgment based on existence of a genuine dispute where an insurer relied on the expert opinions of doctors and "[p]laintiff offer[ed] no evidence that the[ ] doctors" performed biased or incomplete evaluations). Plaintiffs have proffered no evidence raising triable issues of fact concerning the bona fide nature of ServiceMaster's independent evaluation of the damage to their home. Nor have they adduced evidence giving rise to an inference that ServiceMaster's estimate reflected anything other than an honest assessment of the damage evident at the time.

The facts here, in fact, are strikingly similar to those in *Fraley*. There, Allstate hired independent contractors to estimate the damage to an insured's property. 81 Cal.App.4th at 1292, 97 Cal.Rptr.2d 386. The contractors submitted estimates of approximately $110,000. *Id.* Plaintiffs' contractor, by contrast, estimated that repairs would cost approximately $230,000. *Id.* After evaluating the estimates, Allstate determined that the minimum repair cost was $199,000, and promptly paid plaintiffs that amount. *Id.* at 1293, 97 Cal.Rptr.2d 386. Plaintiffs sued Allstate for bad faith, seeking to recover the difference between their estimate and the amount paid. The court granted Allstate's motion for summary judgment, finding that a genuine dispute existed at the time plaintiffs submitted their claim; this genuine dispute, the court held, precluded a finding that Allstate had acted in bad faith. It noted:

> "The record reveals that Allstate handled the Fraleys' claim reasonably, by retaining experts and investigating, paying the undisputed actual cash value of the loss and proceeding to appraisal on the disputed portion of the claim, replacement cost. Moreover, Allstate promptly paid the replacement cost appraisal award after the Fraleys purchased another home. We agree with the trial court that their bad faith claim fails as a matter of law." *Id.*

Here, Allstate and plaintiffs each retained an independent expert to evaluate the damage to plaintiffs' home; each expert arrived at a different estimate. Allstate promptly paid plaintiffs $7,582.09, the undisputed amount of plaintiffs' claim. Allstate also honored plaintiffs' request that it engage in the appraisal process, and paid the appraisal award to plaintiffs soon after it was rendered. The fact that plaintiffs' expert estimated the loss at approximately ten times the amount Allstate's adjuster and expert did is insufficient, by itself, to raise triable issues concerning bad faith. See *Guebara*, 237 F.3d at 993 ("Where the parties rely on expert opinions, even a substantial disparity in estimates for the scope and cost of repairs does not, by itself, suggest the insurer acted in bad faith," citing *Fraley*, 81 Cal.App.4th at 1292, 97 Cal.Rptr.2d 386).

Ultimately, "a single, thorough report by an independent expert is sufficient, all other things being equal, to support application of the 'genuine dispute' doctrine." *Adams*, 187 F.Supp.2d at 1215. It is undisputed that ServiceMaster independently examined plaintiffs' property, and provided an estimate significantly below that of plaintiffs' contractors. Plaintiffs have not raised triable issues of fact regarding the reasonableness of Allstate's reliance on the ServiceMaster estimate in denying their request for additional compensation. Accordingly, the undisputed evidence shows that there was a legitimate, genuine dispute regarding the amount Allstate owed under the policy. This precludes a finding of bad faith.

### b. Whether the Difference Between Plaintiffs' Damage Estimate and the Appraisal Award Establishes That There Was a Genuine Dispute

Allstate also argues that the $38,829.45 difference between plaintiffs' damage estimate and the appraisal award demonstrates, as a matter of law, that there was a genuine dispute concerning the amount of insurance proceeds owed. As authority, it cites *Rappaport–Scott*, 146 Cal.App.4th at 833–35, 53 Cal.Rptr.3d 245. In *Rappaport–Scott*, the court determined that a substantial difference between the amount of loss a plaintiff claims and the amount of loss ultimately found by an arbitrator can conclusively *determine that a genuine dispute existed. Id.* at 839, 53 Cal.Rptr.3d 245 ("[T]he vast difference between the $346,732.34 in losses claimed by Rappaport–Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, *as a matter of law,* that a genuine dispute existed as to the amount payable on the claim" (emphasis original)).

■ This rule has been applied in a handful of cases since *Rappaport–Scott.* In most, as in *Rappaport–Scott*, the difference between the plaintiff's damage estimate and the amount of loss an arbitrator found was substantial, often in the hundreds of thousands of dollars. See, e.g., *Maynard*, 499 F.Supp.2d at 1162 ("Plaintiff's recovery in the arbitration was an astonishing $414,000 less than what he requested, the difference between $500,000 in claimed damages and $86,000 in damages as determined by the arbitrator"); *Holland*, 2007 WL 1456045 at *4 (finding that a genuine dispute existed as a matter of law because "[t]he $19,000 liability the arbitrator attributed to Westport was significantly less than the $1 million Holland demanded"). At least one court, however, has held that even a small difference between plaintiffs' estimate and an appraisal award suffices to show the existence of a genuine dispute. In *Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443, 1470, 127 Cal.Rptr.3d 372 (2011), the court concluded that an arbitrator's award that was $16,000 less than plaintiff's demand was sufficient to defeat a claim that the insurer had acted in bad faith. The court concluded:

> "[T]he undisputed facts ... establish that a dispute arose between Behnke (and his Cumis counsel, English & Gloven) on the one hand, and State Farm on the other, over the amount of policy benefits State Farm was obligated to pay for Cumis counsel fees and costs incurred by English & Gloven on Behnke's behalf; that the dispute was properly submitted to mandatory arbitration under section 2860(c); and that the arbitrator, in an award confirmed by the trial court, ordered State Farm to pay an amount [$16,000] less than the amount billed by English & Gloven. These undisputed facts establish as a matter of law that State Farm's conduct in disputing the ... amount of fees and costs billed by English & Gloven was objectively reasonable, and thus Behnke's insurance bad faith claim, which is based on that conduct, fails as a matter of law. *Id.*

Here, the difference between plaintiffs' estimate and the amount of loss found by the appraisal panel is greater than the difference in *Behnke*, but substantially smaller than that in *Rappaport–Scott, Maynard,* or *Holland.* The fact that the arbitration award was approximately 47 per cent lower than plaintiffs' demand is compelling evidence that Allstate had a reasonable basis for believing plaintiffs' loss estimate was too high. This is particularly true here because, unlike Allstate, the appraisal panel had the benefit of reviewing plaintiffs' hygienist report when

evaluating damages, and *still* concluded that plaintiffs' estimate was almost double the actual damage suffered. The strongest inference that can reasonably be drawn from this fact is that plaintiffs were not entitled to receive insurance proceeds in the full amount they requested, and thus Allstate's refusal to pay them that amount was not bad faith conduct but rather a legitimate business decision.

Plaintiffs cite *Brehm v. 21st Century Ins. Co.*, 166 Cal.App.4th 1225, 83 Cal. Rptr.3d 410 (2008), as authority for the proposition that the discrepancy between their estimate and the appraisal panel's finding is insufficient to demonstrate a lack of bad faith as a matter of law.[45] In *Brehm*, however, "the arbitrator awarded [plaintiff] an amount *in excess* of the $90,000 policy limits he demanded." *Id.* at 1241 n. 7, 83 Cal.Rptr.3d 410 (emphasis added). Given this, the court noted that it could not "hold, at [the pleadings stage], as a matter of law, that a genuine dispute existed as to the amount payable on the claim." *Id.* While an arbitration award of *more than* plaintiff's claim may raise issues of fact as to whether an offer by the insurer to pay *less than* plaintiff demanded was the product of a genuine dispute, here the appraisal panel awarded substantially less than the amount of plaintiffs' claim. As a consequence, the court finds *Brehm* is inapposite.

 Ultimately, the fact that the appraisers determined plaintiffs' loss was roughly half of the damages they claimed, viewed in light of Allstate's reliance on the independent investigation performed by ServiceMaster, strengthens the court's earlier conclusion that the uncontroverted evidence shows there was a genuine dispute regarding Allstate's payment obligation. The court is hesitant, however, to conclude that the discrepancy here is sufficiently substantial, *by itself,* to apply a *per se* rule mandating the entry of summary judgment in Allstate's favor. A plaintiff who only moderately overvalues his loss, in good faith, should not be precluded from adducing other evidence that an insurer acted in bad faith simply because an appraisal panel ultimately awards less than he sought. While a significant difference between an insured's claim and an appraisal might render it unnecessary to evaluate the insurer's conduct in investigating a claim as a matter of law, an insurer who otherwise acted in bad faith should not be insulated from liability simply because the plaintiff's estimate of loss was slightly higher than the arbitrator's ultimate award. The court can conceive of scenarios in which an insurer denies a claim in bad faith, but an appraisal panel award plaintiff less than the amount of his demand. In such an instance, a small discrepancy between plaintiffs' demand and the arbitrator's award should not defeat plaintiff's claim *as a matter of law.*

### c. Whether Allstate Failed Thoroughly to Investigate Plaintiffs' Claim

 Finally, even if the court concluded as a matter of law that there was not a genuine dispute regarding Allstate's obligations, undisputed evidence in the record demonstrates that there are no triable issues of fact concerning the thoroughness of Allstate's investigation. See, e.g., *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 879–80, 93 Cal.Rptr.2d 364 (2000) ("Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim. '[T]he covenant of good faith and fair dealing implied in all insurance agreements entails a duty to investigate properly submitted claims' ").

45. Opp. at 22–23.

It is true that an insurer "cannot reasonably and in good faith deny [benefits] to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 819, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). The only evidence in the record purportedly demonstrating bad faith, however, is the fact that Allstate allegedly failed to meet with plaintiffs' counsel to agree on the scope of coverage Allstate was obligated to provide.[46] Plaintiffs' expert, Richard Masters, opines "that Allstate violated the covenant of good faith and fair dealing … when [it] refused to meet with [plaintiffs' attorney] and the contractors selected by the Keshishes to reach a scope of damages with which all parties could agree."[47] This opinion does not suffice to raise a triable issue of fact. First, as Allstate notes, the testimony is entirely conclusory. The only support Masters offers for his opinion is the observation that insurance claims manuals state claims adjusters have a duty to attempt to reach an agreed scope of damages, and that he has seen adjusters "reprimanded and even terminated for failing to try in good faith to reach an agreed scope of damages."[48] Masters provides no facts concerning the other incidents, however, or any information that would permit the court to conclude that the conduct of Allstate's adjuster in this case was similar. He does not even state that the terminated claims adjusters failed to meet with the insureds. Nor does his reference to statements in unspecified claims manuals that adjusters have a duty to attempt to reach agreement on the amount of a claim show that in this instance, the adjuster's failure to have a personal meeting with plaintiffs constituted bad faith. Masters does not

state that the claims manuals mandate that an adjuster meet with the insureds in an effort to carry out this duty. Nor does he provide any other context concerning the statements purportedly found in the manuals. Absent additional facts, therefore, his opinion is too conclusory to raise triable issues of fact. See *Harris v. Gates,* 145 F.3d 1338, 1998 WL 337954, *3 (9th Cir. May 26, 1998) (Unpub. Disp.) (" '[I]n the context of a summary judgment, an expert must back up his opinion with specific facts.' The object of Rule 56(e) 'is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.' An expert's 'conclusory allegations' do not defeat summary judgment where the record clearly rebuts the inference the expert suggests," quoting *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir.1981), and *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), and citing *In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1425–27 (9th Cir.1994)); *Various Slot Machines on Guam,* 658 F.2d at 700 ("in the context of a motion for summary judgment, an expert must back up his opinion with specific facts"); see also *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985) (a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support his conclusory allegations).

 Masters provides few, if any, details to support his opinion that Allstate failed to negotiate in good faith. Beyond noting that the adjuster declined to have a face to face meeting with plaintiffs and

---

46. Declaration of Anahid Barsegian ("Barsegian Decl."), Docket No. 41 (March 18, 2013), ¶ 11.

47. Declaration of Richard Masters ("Masters Decl."), Docket No. 41 (March 18, 2013), ¶ 8.

48. *Id.,* ¶ 9.

their contractor,[49] he does not describe how or why Allstate's negotiation positions constituted bad faith. He cites no authority for the proposition that insurance adjusters are required to "meet" with insureds. Indeed, the balance of his testimony reflects only that insurers have a general duty to attempt to reach agreement on a scope of damages. Masters cites no industry standard or custom requiring that the effort to reach agreement involve a face to face meeting. Similarly, he cites no industry standard or custom that requires insurers to meet with their insureds' independent contractor. Beyond a failure to meet, Masters identifies no substantive aspect of Allstate's position regarding the amount of the claim that was unreasonable in his view. His opinion that Allstate acted in bad faith by failing to meet with plaintiffs and their contractor is thus unsupported. An expert witness cannot raise triable issues of fact concerning bad faith simply by listing things the insurer could have done differently. See *Cardiner*, 158 F.Supp.2d at 1105 (granting summary judgment on a bad faith claim because "a mere recitation of actions that an insurer should have taken is not dispositive. Indeed, if this were the case, then most insureds could easily claim bad faith"); *Mitchell v. United Nat. Ins. Co.*, 127 Cal.App.4th 457, 477–78, 25 Cal.Rptr.3d 627 (2005) (affirming both summary judgment and the trial court's exclusion of the conclusory declaration of the insured's expert, which included a "discussion of what the underwriters should have done"); see also *Phelps v. Provident Life & Acc. Ins. Co.*, 60 F.Supp.2d 1014, 1023 (C.D.Cal.1999) ("That Defendant did not exhaust all possible tests is not dispositive. Indeed, an insured would always be able to argue

that something else should have been done").

Absent factual support, Masters' conclusion that Allstate "fail[ed] to try in good faith to reach an agreed scope of damages" because it did not meet with plaintiffs or their contractor is too conclusory to raise triable issues of fact and defeat summary judgment.[50] Courts frequently exclude conclusory expert testimony that an insurer has acted in bad faith on the ground that the opinion is nothing more than a legal conclusion. See *Montoya Lopez v. Allstate Ins. Co.*, 282 F.Supp.2d 1095, 1105 (D.Ariz.2003) ("Cerf.'s letter consists primarily of legal conclusions as to the reasonableness of Allstate's actions, which are not proper matters for an expert opinion and are to be disregarded"); *Employers Reinsurance Corp. v. Mid–Continent Cas. Co.*, 202 F.Supp.2d 1212, 1219 (D.Kan.2002) excluding an expert's testimony where the expert opined that an insurer had breached its duty of good faith and fair dealing because such an opinion "constitutes an impermissible attempt to apply the law to the facts of the case to form a legal conclusion"); *Chateau Chamberay*, 90 Cal.App.4th at 349–50, 108 Cal.Rptr.2d 776 (holding that plaintiff's expert's "conclusionary opinions that AIIC (1) had not conducted an adequate and thorough investigation of HOA's loss, (2) had engaged in dilatory claims handling and unreasonable adjusting practices, (3) had arrived at an inadequate initial scope of loss for the structural damage and (4) had failed to obtain all necessary engineering inspections and reports" were not sufficient to demonstrate that an investigation was insufficient). Because he cites no facts supporting the opinion, Masters conclusion that Allstate "fail[ed] to try in good faith to reach an agreed scope of

---

49. *Id.*, ¶ 8.

50. *Id.*, ¶ 9.

damages" is simply a legal conclusion and does not suffice to raise triable issues of fact.

■ Finally, Masters' opinion that Allstate acted in bad faith by failing to agree to a scope of damages with plaintiffs is fundamentally inconsistent with case law. The genuine dispute doctrine is built around the notion that an insurer need *not* agree with plaintiffs on the scope of coverage or damages before it can be found to have acted in good faith. Rather, it will be considered to have acted in good faith as long as it has reasonable grounds for disagreeing with the insured. An insurer need not acquiesce in an insured's claim for coverage, because "[w]hile an insurer must give as much consideration to the interests of its insured as it does to its own, it is not required to disregard the interests of its shareholders and other policyholders when evaluating claims." *Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1148–49, 271 Cal.Rptr. 246 (1990); see also *Chateau Chamberay,* 90 Cal. App.4th at 347, 108 Cal.Rptr.2d 776 ("[A]n insurer is entitled to give its own interests consideration when evaluating the merits of an insured's claim").

This is not a case in which Allstate took no action in the face of its insureds' dispute with its evaluation of the property damage claim. Rather, Allstate hired ServiceMaster to conduct an independent evaluation so that it could determine whether to revise its initial coverage decision. In Masters' parlance, Allstate took this step in an effort to determine the proper scope of damages. While Allstate's ultimate conclusion differed from plaintiffs', that is not evidence of bad faith.[51] See *Fraley,* 81 Cal.App.4th at 1292, 97 Cal.Rptr.2d 386. Accordingly, Master's conclusory opinion that Allstate acted in bad faith by failing to reach agreement with plaintiffs concerning the value of the claim is insufficient to defeat Allstate's motion for summary judgment.

Plaintiffs also assert that Allstate should be estopped from arguing that it conducted a thorough investigation because it sought to have an industrial hygienist conduct a follow-up evaluation at the property.[52] They contend that "[e]ither Allstate's initial investigation was reasonable and in good faith ... or Allstate's initial investigation was neither reasonable nor in good faith ... because Allstate failed to send out a hygienist before [closing the file]."[53] Plaintiffs assert the doctrine of judicial estoppel bars Allstate from asserting "inconsistent" positions on this issue.

■ "Courts uniformly recognize that the purpose of the judicial estoppel doctrine is to protect the integrity of the judicial process by prohibiting parties from changing positions as circumstances warrant." *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.,* 568 F.Supp.2d 1152, 1160 (C.D.Cal.2008). The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two posi-

---

**51.** As Allstate notes, allowing a bad faith claim to proceed beyond summary judgment based only on evidence that an insurer failed to reach agreement with its insured regarding the value of a claim would allow insureds to raise triable issues of fact in every case in which an insurer disagrees with the insured's estimate of the loss, whether or not the insur-

er's valuation was reasonable. (Reply at 5). This is inconsistent with the well-established genuine dispute doctrine.

**52.** Opp. at 20

**53.** *Id.* at 22.

tions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." *Jackson v. County of Los Angeles,* 60 Cal.App.4th 171, 183, 70 Cal.Rptr.2d 96 (1997). Judicial estoppel, however, does not apply, as Allstate has not taken inconsistent positions in judicial or quasi-judicial proceedings. Plaintiffs cite no authority for the proposition that an insurance appraisal is a "quasi-judicial" proceeding, and the court has been unable to find any. See, e.g., *Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1062 (5th Cir.1990) ("an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings"). More fundamentally, Allstate was not successful in asserting its "inconsistent" position during the appraisal; rather, it was required to significantly more than the amount for which it advocated; this shows that the appraisers did not adopt Allstate's position. As a consequence, plaintiffs cannot demonstrate an essential element of judicial estoppel, and the doctrine is inapplicable.

The court is also skeptical that Allstate's positions are wholly inconsistent. The Ninth Circuit has adopted a liberal approach in interpreting this element of judicial estoppel, reflecting its preference that claims be litigated on their merits. See *Admiral Ins. Co. v. Rushmore,* 70 F.3d 1277, 1995 WL 693335, *3 (9th Cir.1995) (Unpub. Disp.) (Noting that "in most cases, [the Ninth Circuit] has declined to

preclude the litigants' allegedly inconsistent claims," citing *United States v. Garcia,* 37 F.3d 1359, 1366–67 (9th Cir.1994)). Allstate's argument that it was prejudiced by the fact that plaintiffs unilaterally submitted a hygienist's report to the appraisal panel and denied Allstate's hygienist access to their property is not inconsistent with an argument that it conducted a thorough investigation. Allstate merely asserts that plaintiffs' retention of a hygienist, whose report they did not share with Allstate, and their refusal to permit Allstate's hygienist to visit the property, gave plaintiffs an advantage in the appraisal. Arguing that it was prejudiced by such conduct is not inconsistent with an assertion that Allstate thoroughly investigated plaintiffs' claim.

 Moreover, to the extent plaintiffs contend that Allstate's failure to retain a hygienist at the outset is evidence of bad faith, the court disagrees. Plaintiffs proffer no evidence that an insurer conducting a reasonable, good faith investigation would necessarily have understood that evaluation by a hygienist was required. They fail, for example, to adduce a hygienist's or contractor's opinion that the need for a hygienist was obvious or that such a professional must be hired in every case where a structure has suffered smoke damage. Plaintiffs' expert, Masters, provides no opinion on this subject; he fails even to mention the fact that Allstate did not retain a hygienist. Plaintiffs' hygienist, moreover, testified that there is no industry standard or requirement that an insurer must retain an industrial hygienist when remediating smoke damage.[54] In light of this testimony, plaintiffs' failure to

---

**54.** Supplemental Declaration of Theona Zhordania, Docket No. 43 (Mar. 25, 2013), Exh. 1 at 123:5–12 ("Q. Are you aware of any standard or guidelines that requires an insurance company to use an industrial hygienist in every fire or smoke damage claim? A. I'm

not aware of any. That would probably be their own policy. I would assume that. Q. Not anything that the industry imposes on them; correct? A. No, not that I'm aware of").

adduce any evidence that the smoke damage to their home was such that the services of a hygienist were required defeats their claim that Allstate acted in bad faith because it failed to retain a hygienist before closing plaintiffs' file. Plaintiffs' lack of evidence is particularly glaring as Allstate has adduced evidence that, based on its review, a hygienist was *not* required. Specifically, Allstate has proffered the declaration of the ServiceMaster technician who conducted the independent review. She states that she "did not see any damage that caused [her] to believe that it would be necessary to retain an industrial hygienist to estimate the cost and/or scope of remediating smoke damage at the Keshishes' property."[55] She further states that "[o]ver the past six years, [she has] successfully remediated similar smoke damage claims without the assistance of an industrial hygienist."[56] Plaintiffs proffer no contradictory evidence. Moreover, as discussed, there is no evidence that ServiceMaster's review was deficient. Consequently, plaintiffs have failed to raise triable issues of fact as to whether Allstate's failure to retain an industrial hygienist prior to closing its file on plaintiffs' claim shows that Allstate acted in bad faith. See *Adams*, 187 F.Supp.2d at 1215) ("The Court concludes that under existing law, a *single, thorough report* by an independent expert is sufficient, all other things being equal, to support application of the 'genuine dispute' doctrine" (emphasis added)).[57]

The fact that Allstate subsequently sought to have a hygienist review the property does not demonstrate that Allstate knew its initial review was not thorough. It simply shows that once Allstate learned plaintiffs had retained a hygienist and submitted her report to the appraisal panel, it sought to protect its interests by having a comparable report prepared. As noted, an insurer is entitled to protect its own legitimate interests when investigating claims. *Chateau Chamberay*, 90 Cal. App.4th at 347, 108 Cal.Rptr.2d 776 ("[A]n insurer is entitled to give its own interests consideration when evaluating the merits of an insured's claim"). Absent evidence that a hygienist should have been retained before Allstate closed its filed, the fact that it felt it advisable to obtain a hygienist's report for purposes of the appraisal does not raise triable issues of fact as to whether its investigation prior to that time was inadequate and undertaken in bad faith.

In short, plaintiffs have failed to adduce evidence that raises triable issues as to whether Allstate investigated their claim in bad faith.[58]

55. Rouel Decl., ¶ 6.

56. *Id.*

57. Plaintiffs' assertion that Allstate failed to investigate their claim thoroughly because it did not retain a hygienist is also disingenuous. It is undisputed that when Allstate advised plaintiffs it was closing their claim, it invited them to submit additional evidence if they felt the evidence warranted a reevaluation of the loss. It is also undisputed that plaintiffs failed to inform Allstate that they had had a hygienist inspect the property and prepare a report. Plaintiffs, in fact, *never* told Allstate they had had a hygienist report prepared; it was only through the appraisers that Allstate discovered this fact, more than a year after plaintiffs' hygienist had inspected the property. It is further undisputed that, once Allstate learned of the hygienist report, plaintiffs denied Allstate's hygienist access to their property to conduct an additional inspection. Plaintiffs' claim that Allstate acted in bad faith by failing to retain a hygienist when they did not communicate to Allstate their view that the services of a hygienist were required, and prevented Allstate from obtaining a hygienist's opinion when it asked to do so, is thus, at a minimum, suspect.

58. As the court has determined that a genuine dispute existed regarding the amount of insurance proceeds Allstate was required to pay,

## III. CONCLUSION

In conclusion, Allstate's motion for summary judgment is granted.

### JUDGMENT FOR DEFENDANT

On April 22, 2013, the court entered an order granting defendant's motion for summary judgment. Accordingly,

IT IS ORDERED AND ADJUDGED

1. That plaintiffs take nothing by way of their complaint; and

2. That the action be, and it hereby is, dismissed.

the court does not address Allstates' additional arguments regarding plaintiffs' failure to disclose the hygienist report. The court notes, however, that the undisputed fact that Allstate did not discover the existence of the report until the eve of appraisal bolsters the conclusion that, based on the evidence it had before it, Allstate acted reasonably and in good faith when it initially concluded that plaintiffs' estimate was too high.